UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ST. JAMES INCORPORATED f/k/a
ASC INCORPORATED,

Debtor.
_____/

Case No. 07-48680

Chapter 11

Judge Thomas J. Tucker

**OPINION AND ORDER REGARDING RECONSIDERATION ARGUMENTS
MADE BY CARSON FISCHER, P.L.C. AND FURTHER PROCEEDINGS,
REGARDING DEBTOR'S VALUATION MOTION (DOCKET # 1281)**

This case came before the Court on the Debtor's motion entitled "Debtor's Motion to Value the Creditors Committee's Direct Claims in the Adversary Proceeding and the Lien Objection" (Docket # 1281, the "Debtor's Valuation Motion"). Previously, the Court held hearings on this motion on January 7, 2009, January 21, 2009, and March 18, 2009. During the January 21, 2009 hearing, the Court issued a bench opinion in which it ruled on several issues relating to Debtor's Valuation Motion. In a supplemental brief filed on February 18, 2009 (Docket # 1471), and at the March 18, 2009 hearing, Carson Fischer, P.L.C. ("Carson Fischer") argued that the Court should reconsider and reverse itself on some of its January 21 rulings. After initially scheduling a further hearing for April 8, 2009, in part, to give a bench opinion on Carson Fischer's reconsideration arguments, the Court decided to issue a written opinion on those arguments. This is that written opinion.

**A. Background**

In its January 21, 2009 bench opinion, the Court prefaced its rulings by stating the following background, regarding the meaning of the "Committee Percentage Objection"

calculation to be done under Section 4.3.4 of the confirmed Chapter 11 plan:[1]

> I read earlier from Section 4.3.4 regarding the formula to be used in – in determining the [C]ommittee [O]bjection [P]ercentage. The Court has to "value the Committee Objection as a percentage of the entire value of the Holdings' Litigation." And for purposes of that valuation, "the value of the D and O litigation or any other claim against the debtors [*sic*][2] shall be excluded."
>
> As I noted earlier the – the terms [C]ommittee [O]bjection and Holdings' Litigation are defined in the plan. Committee Objection is a defined term in Section 1.2.18 at Page 6 of the confirmed plan. It is defined to mean, "the objection to extent validity, perfection, and priority of pre-petition liens and claims filed by and on behalf of the [C]reditors' [C]ommittee (not on behalf of the estate) on August 3, 2007 against Holdings and which was consolidated on September 19, 2008 into the adversary proceeding by way of a minute entry by the Bankruptcy Court."
>
> The term "Holdings' Litigation" is defined in Section 1.2.43 of the plan at Pages 9 to 10 of the plan to mean, "any claims which were or could have been brought against Holdings or any of its or the debtor's insiders, or affiliates, including but not limited to recharacterization of debt to equity, equitable subordination, avoidance and recovery of fraudulent transfers, and/or any objections to the extent, validity, perfection, and/or priority of Holdings' pre-petition or post-petition liens and claims which may or may not be fully described or included in the adversary proceeding. The term specifically excludes the D and O litigation."
>
> The [C]ommittee [O]bjection, the definition which I just read from the plan, refers to – expressly refers to the document that was filed bearing the title listed in Section 1.2.18 by the [C]reditors' [C]ommittee in the main bankruptcy case. It was filed at docket No. 473 in the main case on August 3, 2007.
>
> The Holdings' [L]itigation and the reference to that in the definition of Holdings' Litigation, in its reference to adversary

---

[1] The confirmed plan, and the order confirming the plan, appear at Docket ## 1185 and 1245.

[2] The word "debtors" here should be "Directors."

2

proceeding and to claims that were filed against Holdings, et cetera, refers to adversary proceeding number 07-6171. The most – or recent complaint filed by the [C]ommittee in that action was its amended complaint filed on August 3, 2007 which appears at docket No. 3 in the adversary proceeding.[3]

After this, the Court recounted certain arguments made by the Debtor and by Carson Fischer:

> The – the debtor's – one of the debtor's arguments and position which I – it appears from the January 7 hearing at least, if not from the actual written response to the debtor's valuation motion filed by Carson, Fischer, it appears Carson, Fischer agrees with, is that only so-called direct actions or claims of the committee that it had in its claim objection if any, can be counted as part of the committee objection for purposes of the formula in Section 4.3.4 as opposed to so-called derivative actions or claims by the committee that the committee brought on behalf – solely on behalf of the estate.
>
> These derivative claims or actions according to the debtor cannot be considered part of the [C]ommittee [O]bjection for purposes of the Section 4.3.4 formula. The debtor also takes the position that whether or not the [C]ommittee, any given [C]ommittee claim, or objection, or action is – is derivative or direct in order to be part of the [C]ommittee [O]bjection in the Section 4.3.4 formula the [C]ommittee's claim, or action, or objection to the Holdings' claims would have to assert a right to payment or disbursement directly to the committee on behalf of its constituents, the general unsecured creditors other than Holdings, and not to the bankruptcy estate as a whole.
>
> Now Riverside disputes the debtor's arguments, Carson, Fischer arguments, . . ..[4]

The Court then rejected the Debtor's and Carson Fischer's arguments, ruling as follows:

> In my view having examined the plan carefully including the provisions that I have noted so far in this bench opinion for purposes of the formula in Section 4.3.4 for calculating the

---

[3] Transcript of January 21, 2009 hearing at 23-25 (Docket # 1464).

[4] *Id.* at 26-27.

> [C]ommittee [O]bjection [P]ercentage[,]
>
> It makes no difference whether or to what extent in the [C]ommittee [O]bjection or the Holdings' [L]itigation there are included claims or theories or objections that are direct by the [C]ommittee, or derivative. That is derivative being as opposed to direct, being on behalf of – brought on behalf of the debtor or the estate.
>
> Further, it makes no difference whether or to what extent success by the [C]ommittee on any of the claims or theories or objections in either the committee objection or the Holdings' [L]itigation would have resulted in, if successful, in payments or disbursements or a benefit directly to the [C]ommittee or its constituents as opposed to flowing to the estate as a whole.
>
> In my view on these . . . plan provisions including Section 4.3.4 and the definitions I have quoted, are clear and unambiguous. The plan easily could have said what the debtor contends Section 4.3.4 means, but it does not. But rather it defines the terms [C]ommittee [O]bjection and Holdings'[L]itigation in my view without preference [*sic*][5] to these factors, derivative versus direct, benefit or money flowing direct to the [C]ommittee and its constituents as opposed to the benefitting the estate as a whole. The plan simply doesn't say that.
>
> Rather the [C]ommittee [O]bjection and the Holdings'[L]itigation each can be considered to have value for purposes of Section 4.3.4, even if the value of either the [C]ommittee [O]bjection or the Holdings' [L]itigation as those terms are defined, is a benefit or value to the estate as a whole and not a direct benefit only to the [C]ommittee and its constituents.[6]

After this ruling, Carson Fischer filed a brief arguing extensively that the Court erred in making these rulings, and should reverse itself.[7] Riverside Claims L.L.C., a general unsecured creditor, disputed Carson Fischer's reconsideration arguments.[8] The parties debated Carson

---

[5] The word "preference" here should be "reference."

[6] Transcript (Docket # 1464) at 27-28.

[7] Docket # 1471.

[8] Docket # 1479.

4

07-48680-tjt    Doc 1537    Filed 10/16/09    Entered 10/16/09 16:58:54    Page 4 of 11

Fischer's reconsideration arguments at the hearing on March 18, 2009.

After carefully considering the parties' arguments, the Court now will modify its January 21, 2009 bench opinion rulings, to the extent stated in this opinion, but not otherwise.

**B. Discussion of the distinction between direct claims and derivative claims**

As the Court noted in its January 21, 2009 bench opinion, quoted above, Section 1.2.18 (at page 6) of the Plan defines the term "Committee Objection," one of the terms used in the "Committee Objection Percentage" formula in Section 4.3.4 of the Plan, to mean the claim objection filed by the Committee in this case on August 3, 2007. That claim objection appears at Docket # 473. The Plan's § 1.2.18 definition of "Committee Objection" explicitly refers to the claim objection as having been filed "on behalf of the Creditors Committee (not on behalf of the Estate)."

The Plan's reference to the Committee Objection having been filed on behalf of the Committee, and not on behalf of the bankruptcy estate, is accurate. Although the Committee's claim objection initially stated that it was filed "on behalf of the estate of" the Debtor, and "on behalf of the Debtor's estate,"[9] Holdings filed a motion to strike the claim objection. And in resolving that motion to strike by agreement, Holdings and the Committee agreed to the following provision, contained in the Court's Order filed September 24, 2007:

> The phrase "on behalf of the estate of ASC Incorporated" appearing in the introductory paragraph of the Objection shall be deemed removed from the Objection.[10]

In its bench opinion given on June 4, 2008, denying the motion to approve a settlement between the Committee, the Debtor, and Holdings, the Court ruled that this provision in the September

---

[9] Docket # 473 at 1, first sentence and at 1 ¶ 1.

[10] Docket # 684 at ¶ 2.

24, 2007 Order changed the Committee's claim objection, from being made on behalf of the estate, to rather one being made only on behalf of the Committee and its constituents, which the Court defined to be the general unsecured creditors in this case. The Court also characterized this claim objection as being made "directly" by the Committee, rather than on behalf of the estate as a whole.[11]

The Court stated:

> when . . . the committee's objection that was filed to Holdings' lien in . . . in the main bankruptcy case at docket No. 473, . . . [it] explicitly stated that the objection to the claim of Holdings was brought only --was brought on behalf of the estate. And it was stated only that way, rather than giving any indication that the committee was making that claim objection on its own behalf directly as opposed to on behalf of the estate.
>
> I do think as Mr. Weisberg argued, do agree that the later order of September 24, 2007 at docket No. 684, changed the capacity in which the committee was bringing [the] claim objection and did so in response to a motion to strike the objection that had been filed Holdings.
>
> And explicitly stated that the reference to the claim objection being brought by the committee, [on] behalf of the "estate" was stricken from the claim objection. The effect of that was that the objection to claim to Holdings' secured claim that was brought, filed at docket No. 473 by the committee in the main case, must be viewed as being brought having been brought and having been prosecuted on behalf of the committee directly rather than on behalf of the estate as a whole and therefore by the committee on behalf of its constituency which is as the committee has pointed out in its reply brief filed . . . on this settlement motion that that constituency is the body of general unsecured creditors and does not include the administrative claim holders, including those who

---

[11] Transcript of June 4, 2008 bench opinion (Docket # 1173) at 92-93. Riverside Claims, L.L.C., knew or at least had reason to know of the Court's June 4, 2008 bench opinion, well before the September 17, 2008 confirmation hearing that led to confirmation of the Holdings plan. Riverside was itself a member of the Creditors Committee for a period of time, and the transcript of the Court's bench opinion was filed, and therefore made publicly available electronically, on June 18, 2008 (Docket # 1173).

--any of those who have objected to the settlement motion.[12]

In its June 4, 2008 bench opinion, the Court drew a distinction between the Committee's claim objection (which is the "Committee Objection" as that term is defined in the Plan) and the Committee's adversary proceeding against Holdings and the Directors. As just noted, the Court held that the claim objection (what is now defined in the Plan as the "Committee Objection") was brought solely as a direct claim or claims by the Committee, solely on behalf of the Committee's constituents (the general unsecured creditors).

In contrast, the Court ruled on June 4, 2008, the claims made in the Committee's adversary proceeding against Holdings were made derivatively, on behalf of the estate as a whole. This is consistent with the Court's September 20, 2007 Order, granting the Committee standing to pursue the claims in the adversary proceeding "on behalf of the Debtor and its estate," and stating that the proceeds of such claims "shall constitute property of the estate."[13] The Committee's adversary proceeding claims against Holdings are part of what the Plan defines as the "Holdings Litigation," one of the terms used in calculating the Committee Objection Percentage under Plan § 4.3.4.

The Court stated:

> Now the adversary proceeding that was filed by the committee . . . in the complaint, the amended complaint, and I'm focusing on the amended complaint in the adversary proceeding, case number 07-6171 of August 3, . . . 2007, in both the caption and the introductory paragraph on the second page of that document states that the action is brought by the committee as plaintiff on behalf of the estate.
>
> And a view of the claims brought in that adversary

---

[12] Transcript (Docket # 1173) at 92-93.

[13] *See* Order (Docket # 672) at 2 ¶¶ 3, 4.

7

> proceeding then by the committee as having been brought on behalf of the bankruptcy estate. Now the committee filed a motion seeking an order of the Court authorizing them to bring claims stated in the adversary proceeding on behalf of the estate.
>
> And the Court ultimately granted that motion in the form of --and after a hearing and much dispute, in the form of an order, the order of September 20, 2007, docket No. 672 that I referred to earlier. That order is contained in paragraphs 3 and 4 that I described and read from earlier.
>
> And [I] did say I want to repeat Paragraph 4 that the proceeds if any of any settlement of the Claims shall constitute property of the estate. The committee has conceded that it had no right and could not bring directly claims in the adversary proceeding of the following kinds.
>
> One, the breach of fiduciary duty claims against the directors. Two, claims to avoid fraudulent --allegedly fraudulent pre-petition transfers in the form of payments to Holdings by the debtor in payment of the debt of Holdings that occurred pre-petition which fraudulent transfer claims were premised on success in the recharacterization of the Holdings' claim in debt to equity. And the recharacterization and equitable subordination claims similar to those claims or arguments that were made in the committee's objection that was filed to Holdings' claim in the main case.
>
> Now the recharacterization actually I view all of the claims in the adversary proceeding as having been brought on behalf of the estate by the committee based on the terms of the amended complaint filed in that case by the committee and based on the September 20, 2007 order.[14]

The Committee Objection and the Holdings Litigation both include an objection/claim seeking a recharacterization of Holdings's secured claim to equity, and a claim/objection seeking equitable subordination of Holdings's secured claim. As the Court ruled in its June 4, 2008 bench opinion, however, these identical claims were brought by the Committee in two different

---

[14] Transcript (Docket # 1173) at 94-95.

capacities — in the claim objection as direct claims solely on behalf of the Committee and its constituents; and in the adversary proceeding as derivative claims solely on behalf of the estate as a whole. In contrasting it with the Committee's adversary proceeding complaint claims, the Court stated the following about the Committee's claim objection:

> The committee's prosecution of its objection filed in the main case to Holdings' claim however, which I described earlier and which was filed at docket No. 473, I view as having been brought and prosecuted and now being proposed to be settled as a right of the committee directly rather than a right of the estate and therefore settlement --proceeds from the settlement of that --of the settlement of the committee's objections to Holdings' claim would not be viewed as property of the estate under Paragraph 4, however [or] any other part of the September 20, 2007 order that I described earlier, docket 672.[15]

**C. The "standing argument"**

The Court understands Debtor and Carson Fischer to argue, in effect, and among other things, that the value of the Committee Objection (the Committee's claim objection) must be zero as a matter of law, because under the law a creditors committee may not *validly* object to another creditor's claim under theories of recharacterization and equitable subordination as a *direct* claim, *brought solely on behalf of the committee and its constituents*. Rather, the Debtor and Carson Fischer argue, such relief may be sought *only* by a committee *derivatively*, *solely on behalf of the bankruptcy estate as a whole*. For this reason, Debtor and Carson Fischer argue, the Committee's claim objection, which the Court previously ruled was brought only as a direct claim, was doomed to fail as a matter of law, even if the same theories for relief (recharacterization of debt to equity and equitable subordination) were meritorious and would prevail as derivative claims in the adversary proceeding. For abbreviation purposes only, the

---

[15] *Id.* at 95-96.

Court will refer to this argument below as the "standing argument."

The Court concludes that if Debtor and Carson Fischer are right about their standing argument, then the Court must indeed determine, as a matter of law, that the value of the Committee Objection (and therefore the "Committee Objection Percentage") is zero.

The Debtor briefed the standing argument, with citation to some cases.[16] Riverside Claims, L.L.C. disputed the argument, also with citation to some cases. As the Court understands it, Riverside argued, among other things, that a creditors committee does have standing to object to another creditor's claim directly, on behalf of its constituents, based on recharacterization and equitable subordination theories, and is not limited to doing so only derivatively.[17] To date, Carson Fischer has not briefed the standing issue, as best the Court can tell. The Court has not ruled on the merits of the standing argument; it was unnecessary to do so given the Court's January 21, 2009 rulings.

**D. The Court's error**

The Court concludes that it erred in making the following ruling in its January 21 2009 bench opinion, and now will correct that error:

> It makes no difference whether or to what extent in the [C]ommittee [O]bjection or the Holdings' [L]itigation there are included claims or theories or objections that are direct by the [C]ommittee, or derivative. That is derivative being as opposed to direct, being on behalf of – brought on behalf of the debtor or the estate.

This ruling was erroneous — it *does* matter whether the Committee Objection includes direct rather than derivative claims. It matters because of the "standing argument," which the Court

---

[16] Docket # 1282 at 3-6.

[17] Docket # 1337 at 9-10.

now must resolve as part of its ruling on the Debtor's valuation motion.[18]

   **E. Conclusion**

As noted above, it appears to the Court that Carson Fischer has never briefed the standing issue discussed in this opinion. While it is true that Carson Fischer did have the opportunity to brief that issue before the Court made its January 21, 2009 bench opinion rulings, the Court in its discretion will give Carson Fischer the opportunity to do so now, if it wishes.
to) the standing argument discussed and referred to in this opinion and order. Such a brief is optional, but if Carson Fischer wishes to file such a brief, it must do so no later than October 30, 2009.

**Signed on October 16, 2009**                     /s/ Thomas J. Tucker
                                   **Thomas J. Tucker**
                                   **United States Bankruptcy Judge**

---

[18] The Court concludes that with this exception, the rulings in its January 21, 2009 bench opinion were correct. Except to the extent stated in this opinion, therefore, the Court declines to modify those rulings. With respect to Carson Fischer's argument that in its January 21, 2009 bench opinion the Court did not react correctly to, or adequately consider, the statement at p. 42 of Holdings' Disclosure Statement, regarding what Holdings' "position" was, the Court would add the following to what it said in its bench opinion. At page 38, the Holdings Disclosure Statement itself says the following, which makes clear that the Disclosure Statement should not be viewed as part of the plan, and should not be viewed as definitive with respect to the meaning of the plan:

> **The Holdings Disclosure Statement may not be relied upon for any purpose other than to determine whether to vote in favor of or against the Holdings Plan.** Nothing contained herein shall constitute an admission of any fact or of liability by any party.
>
> Certain of the information contained in the Holdings Disclosure Statement, by its nature, is in the manner of projections, which may prove to be different from actual results.

(Docket # 1185 at 38)(emphasis added).